UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| RALPH COUNTRYMAN, | ) | 3:10-cv-00107-LRH (RAM) |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| STATE OF NEVADA, et al., | ) | |
| Defendants. | ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Partial Motion to Dismiss. (Doc. #16.)[1] Plaintiff has opposed (Doc. #23) and Defendants replied (Doc. # 24). After a thorough review, the court recommends Defendants' motion be granted in part and denied in part, as set forth below.

## I. BACKGROUND

At all relevant times, Plaintiff Ralph Countryman (Plaintiff) was in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 8).) Plaintiff is currently an inmate at Northern Nevada Correctional Center. (Defs'. Mtn. to Dismiss (Doc. # 16) at 2.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (Doc. # 8.) Defendants are Brian Williams, Cheryl Burson, David Magnum, Howard Skolnik and Susan Stewart. (*Id.*)

---

[1] Refers to the court's docket number.

Plaintiff's Complaint was filed August 27, 2010. (Doc. # 8.) On screening, the court dismissed the State of Nevada as well as Counts III and V. (*Id.* at 8.) In Count I, Plaintiff alleges Defendants retaliated against him by convicting him of a disciplinary violation and putting him in disciplinary segregation for pursuing civil litigation. (*Id.* at 5-7.) He also claims that upon later dropping the disciplinary charges, Defendants intimidated him into requesting protective segregation. (*Id.*) In Count II, Plaintiff alleges that Defendants violated his Fourteenth Amendment right to due process by convicting him of a disciplinary violation and placing him in disciplinary segregation without supporting evidence. (*Id.* at 8-9.) In Count IV, Plaintiff contends that Defendants violated his right to free exercise of his religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. (*Id.* at 12-13.) Specifically, he asserts that from October 17, 2007 to June 5, 2008, he was in protective segregation and was precluded from attending church services. (*Id.*)

Defendants filed the instant Partial Motion to Dismiss arguing: (1) Plaintiff fails to state a claim upon which relief may be granted as to Count II; (2) Plaintiff's First Amendment and RLUIPA claims in Count IV must be dismissed for failure to exhaust administrative remedies; (3) Defendant Stewart is entitled to absolute immunity; and (4) Defendant Skolnik should be dismissed for lack of personal participation. (Doc. # 16.)

## II. LEGAL STANDARD

"A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law." *North Star Int'l v. Ariz. Corp. Comm'n.,* 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted). Under Rule 8(a), "a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The Supreme Court has found that at minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citation omitted).

2

The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations and citation omitted).

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citation omitted). However, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

A *pro se* plaintiff's complaint must be construed liberally and can only be dismissed where it appears certain that the plaintiff would not be entitled to relief. *Ortez v. Washington County, State of Or.*, 88 F.3d 804, 807 (9th Cir. 1996). Although allegations of a *pro se* complaint are held to a less stringent standard than formal pleadings drafted by a lawyer, *Haines v. Kerner*, 404 U.S. 519 (1972), sweeping conclusory allegations will not suffice. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

### III. DISCUSSION

**A.   COUNT II-FOURTEENTH AMENDMENT DUE PROCESS**

Defendants argue that Count II should be dismissed for failure to state a claim upon which relief can be granted because Plaintiff has no protected liberty interest in: (1) remaining free from disciplinary segregation; (2) his prison pay, prison job, or preferred housing assignment; and (3) the processing of his disciplinary appeal. (Doc. # 16 at 5-10.)

Plaintiff contends that the motion should be denied because: (1) the court found on screening that he stated a colorable due process claim; (2) he has a clearly established right to due process; and (3) he has a liberty interest in the processing of his disciplinary appeal created by NDOC's administrative regulations and NRS 209.131-209.161.

In Count II, Plaintiff alleges Defendants violated his due process rights under the Fourteenth Amendment in connection with a disciplinary conviction on September 25, 2007. (Doc. # 8 at 8-9.) He alleges that Defendants Stewart, Burson and Magnum did not meet the "some evidence" standard to support his disciplinary conviction. (*Id.* at 8.) Plaintiff claims that Defendant Stewart tried to have the disciplinary conviction overturned, but Defendant Williams refused to do so because Plaintiff had requested protective segregation which would last longer than his disciplinary segregation sentence. (*Id.*) Plaintiff asserts that Defendant Burson deprived him of the opportunity to appeal his disciplinary conviction. (*Id.*) As a result of the failure to overturn the disciplinary conviction, Plaintiff contends he was deprived of his job, his prison pay, and his preferred housing assignment. (*Id.* at 9.)

While "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen," "[p]risoners may [ ] claim the protections of the Due Process Clause." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974). The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law." *Id.* at 555. Those who seek to invoke due process protections must establish one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A liberty interest may arise from either of two sources: the due process clause or state law. *Id.* at 221.

First, under the Constitution itself, a liberty interest is implicated when the conditions of confinement "[exceed] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin v. Conner*, 515 U.S. 472, 484 (1985).

Second, "a liberty interest in avoiding particular conditions of confinement *may* arise from state policies or regulations, subject to the important limitations set forth in *[Sandin]*." *Wilkinson*, 545 U.S. at 222 (internal citation omitted). Under *Sandin*, liberty interests created by the state are generally limited to those that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. To determine whether a restraint imposes "atypical and significant hardship," a court considers

4

a condition or a combination of conditions or factors on a case by case basis, rather than invoking a single standard. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *see also Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (citation omitted). Although there is no single standard for determining whether a prison hardship is atypical and significant, in *Sandin* the Supreme Court cited three factors that provide a helpful framework: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Sandin*, 515 U.S. at 486-87.

### 1. Disciplinary Segregation

While "prisoners do not shed all constitutional rights at the prison gate, [ ] lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin*, 515 U.S. at 485 (internal quotation marks and citations omitted). In *Sandin*, the Supreme Court concluded that the disciplinary segregation imposed was not atypical and significant because: (1) it mirrored the conditions of administrative segregation and protective custody; (2) placing him in disciplinary segregation for thirty days did not disrupt his environment; and (3) it did not affect the duration of his sentence. *Id.* at 485-487.

Defendants are correct that Plaintiff alleges the conditions in disciplinary segregation mirrored those of protective custody, however, the complaint does not disclose any further details to reveal the conditions Plaintiff experienced in protective custody or disciplinary segregation to allow the court to determine whether they pose an atypical and significant hardship implicating a liberty interest. While the Supreme Court found no atypical or significant hardship in *Sandin*, the Ninth Circuit has instructed that conditions are to be reviewed on a "case by case, fact by fact consideration" utilizing the *Sandin* factors. *Serrano*, 345 F.3d at 1078 (citation omitted). Although administrative segregation typically does not

implicate a liberty interest in and of itself, the circumstances of a particular case may result in segregation working an atypical and significant hardship on an inmate so as to implicate a protected liberty interest. *See, e.g., Wilkinson*, 545 U.S. at 222-24; *Serrano*, 345 F.3d at 1078-79.

Here, the court has not been presented with enough information on the face of the Complaint to determine whether the conditions are atypical and significant under *Sandin*, including: (1) the conditions Plaintiff experienced; (2) the duration of Plaintiff's confinement in disciplinary segregation; and (3) whether the duration of Plaintiff's sentence was affected by his placement in disciplinary segregation. *See Sandin*, 515 U.S. at 486-87. Because the court cannot analyze each of the *Sandin* factors from the face of the Complaint, the motion to dismiss must be denied. Defendants may be able to establish Plaintiff had no protected liberty interest after submitting a properly supported motion for summary judgment, but the court cannot make that determination at this juncture relying on the Complaint alone. Therefore, Defendants' motion to dismiss Plaintiff's claim in Count II of a violation of his due process rights as a result of his assignment to disciplinary segregation should be denied.

### 2. Prison job, pay, and preferred housing assignment

The Thirteenth Amendment's prohibition against involuntary servitude includes an exception for those duly convicted of a crime. U.S. Const. amend. XIII, § 1. The Ninth Circuit has held inmates have no recognized liberty interest in work programs. *Serra v. Lapin*, 600 F.3d 1191 (9th Cir. 2010) (citing *Stanley v. Gonzales*, 476 F.3d 653, 660 (9th Cir. 2007)); *see also Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985) (holding that state does not deprive a prisoner of a constitutionally protected liberty interest by forcing him to work without pay). Therefore, Plaintiff's claim that Defendants violated his due process rights because he was deprived of a prison job and pay should be dismissed with prejudice.

To the extent Plaintiff asserts a constitutional violation because he was denied his preferred housing assignment, he fails to state a claim upon which relief may be granted. The Supreme Court has instructed:

> [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison…The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

*Meachum v. Fano*, 427 U.S. 215, 224 (1976) (emphasis in original). Therefore, Plaintiff's claim that Defendants violated his due process rights by denying him his preferred housing assignment should be dismissed with prejudice.

### 3. Processing of the Disciplinary Appeal

To the extent Plaintiff alleges a due process violation as a result of the processing of his disciplinary appeal, he fails to state a claim because a prisoner's "claimed loss of a liberty interest in the processing of his appeals does not [amount to a protected liberty interest] because inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (citation and quotations omitted). Therefore, Plaintiff fails to establish a liberty interest giving rise to particular procedural protections, and this claim should be dismissed with prejudice.

### B. COUNT IV-EXHAUSTION

Defendants argue that Plaintiff's First Amendment and RLUIPA claims in Count IV must be dismissed as a result of Plaintiff's failure to exhaust his administrative remedies. (Doc. # 16 at 10.) Defendants contend that a review of Plaintiff's grievance history reveals that Plaintiff did not submit a grievance stating that he was denied church services from October 17, 2007 through June 5, 2008. (*Id.*, Ex. A.)

Plaintiff asserts that he did fully exhaust his administrative remedies because he submitted a second level grievance that states he was being denied a job and access to programs and was being held in conditions identical to disciplinary segregation. (Doc. # 23 at 3.) Plaintiff further argues that circuits have recognized circumstances where exhaustion

1 is not necessary and contends that he was only required to intelligibly object to an asserted
2 shortcoming. (*Id.* at 3-4.) He also claims that filing a grievance would have been futile
3 because his grievances would just be denied. (*Id.* at 4-5.)

4 The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought
5 with respect to prison conditions under section 1983 of this title, or any other Federal law, by
6 a prisoner confined in any jail, prison, or other correctional facility until such administrative
7 remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his
8 administrative remedies irrespective of the forms of relief sought and offered through
9 administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court has
10 clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally
11 infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548
12 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and
13 doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo*
14 *v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

15 This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth
16 two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance
17 is fully addressed on the merits by the administrative agency and appealed through all the
18 agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all
19 critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev.
20 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper
21 exhaustion'. Defendants must show that Plaintiff failed to meet both the merits and
22 compliance tests to succeed in a motion to dismiss for failure to exhaust administrative
23 remedies." *Id.*

24 The failure to exhaust administrative remedies is treated as a matter in abatement and
25 is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108,
26 1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative
27 remedies is an affirmative defense, and defendants bear the burden of raising and proving

28

1  failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look
2  beyond the pleadings and decide disputed issues of fact without converting the motion into
3  one for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's
4  Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner
5  bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of
6  the claim without prejudice." *Id.* at 1120.

7        In Count IV, Plaintiff alleges that between October 17, 2007 and June 5, 2008, while
8  in protective segregation, Defendants Burson and Williams deprived Plaintiff of any church
9  services. (Doc. # 8 at 12.)

10       Defendants submit the declaration of Molly Collins, who performed a search of NDOC's
11 records for the time period of October 17, 2007 through January 18, 2011, revealing that
12 Plaintiff did not fully exhaust his administrative remedies with respect to an alleged denial of
13 religious services from October 17, 2007 to June 5, 2008. (Doc. # 16 Ex. A at ¶ 7.)

14       First, Plaintiff's reference to Grievance No. 20062700236 is insufficient to demonstrate
15 that he exhausted his administrative remedies with respect to his First Amendment and
16 RLUIPA claims in this action. Grievance Number 2006700236 relates to Plaintiff's complaint
17 that he was being denied a job as a result of his protective status. (Doc. # 23 at 10-19.) There
18 is no indication that he was complaining about being denied access to religious services. In
19 *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009), the Ninth Circuit held that while
20 inmates are not required to allege the precise legal theory to be advanced, to properly exhaust
21 their administrative remedies they must provide sufficient information in the grievance so that
22 prison staff can address and respond to the situation. *Id.* Here, Plaintiff cannot rely on
23 Grievance Number 2006700236 to satisfy the exhaustion requirement because he did not
24 include any information that would alert prison officials that he was being denied access to
25 religious services.

26       Second, Plaintiff's argument that he is somehow excused from the exhaustion
27 requirement and that exhaustion would have been futile are unconvincing. The Ninth Circuit

28       9

1 discussed possible exceptions to the PLRA's exhaustion requirement in *Nunez v. Duncan*, 591
2 F.3d 1217 (9th Cir. 2010). These include: the unavailability of administrative procedures,
3 obstruction of attempts to exhaust, and preventing exhaustion by failing to follow grievance
4 procedures. *Id.* (citation omitted). None of these exceptions are applicable here. Plaintiff has
5 not argued that the grievance system was unavailable to him. He does not argue that NDOC
6 officials obstructed his attempts to exhaust. Nor does he assert that he was prevented from
7 exhausting because grievance procedures were not followed. Plaintiff's logic that he should
8 not be required to exhaust because his grievances would be denied is nonsensical. Plaintiff has
9 simply failed to assert that any recognized exception to the exhaustion requirement applies.

10 For these reasons, Plaintiff's First Amendment and RLUIPA claims in Count IV should
11 be dismissed without prejudice.

**C.   DEFENDANT STEWART**

Defendant Stewart argues that she should be dismissed because she is entitled to absolute immunity as a Deputy Attorney General. (Doc. # 16 at 10-11.)

"[T]he Supreme Court has determined that certain government officials require absolute immunity from liability in order to enable them to function independently and effectively, without fear of intimidation or harassment. Accordingly, the Court has granted absolute immunity to...judges, prosecutors,...and officials performing quasijudicial functions." *Fry v. Melaragno*, 939 F.2d 832, 835-36 (9th Cir. 1991) (internal quotation marks, citations, and footnote omitted). Prosecutorial immunity protects eligible government officials when they are acting pursuant to their official role as advocate for the State performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Kalina v. Fletcher*, 522 U.S. 118, 124-26 (1997); *Botello v. Gammick*, 413 F.3d 971, 975 (9th Cir. 2005); *Genzler v. Longanbach*, 410 F.3d 630, 636-37 (9th Cir. 2005); *KRL v. Moore*, 384 F.3d 1105, 1110 (9th Cir. 2004); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) When sued in official and individual capacities, the Ninth Circuit has held that an attorney general or deputy attorney general has absolute immunity, except

10

they "are not immune from any actions that are wholly unrelated to or outside of their official duties." *Bly-Magee v. California*, 236 F.3d 1014, 1016 (9th Cir. 2001); *see also Fry,* 939 F.2d at 837 (government lawyers absolutely immune for actions "intimately" or "closely" associated with judicial process). "Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or agency hearing, absolute immunity is 'necessary to assure that...advocates...can perform their respective functions without harassment or intimidation.'" *Id.* (citation omitted).

Plaintiff alleges that Defendant Stewart is a Deputy Attorney General who abused her office to violate Plaintiff's rights. (Doc. # 8 at 3.) Plaintiff appears to assert that Defendant Stewart, along with Defendants Burson and Magnum, conspired to retaliate against Plaintiff by bringing a disciplinary action against Plaintiff after he sent a notice of misconduct letter concerning action taken by Defendant Stewart in connection with two other civil complaints filed by Plaintiff. (*Id.* at 5.)

While Defendant Stewart may ultimately be entitled to absolute immunity, the scope of her conduct is not clear from the face of the Complaint. Because the court cannot determine whether she is entitled to absolute immunity at this juncture, the motion to dismiss Defendant Stewart should be denied.

**D.    DEFENDANT SKOLNIK**

Defendant Skolnik argues that he should be dismissed because Plaintiff fails to establish his personal involvement in any alleged constitutional violations. (Doc. # 16 at 12-13.) Plaintiff contends that the argument is moot because Skolnik has retired and has been replaced by Director Greg Cox. (Doc. # 23 at 6.)

A claim brought under 42 U.S.C. § 1983 requires a specific relationship between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates

1  in another's affirmative acts, or omits to perform an act which he is legally required to do that
2  causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743
3  (9th Cir. 1978)(citation omitted).  Thus, Plaintiff must demonstrate that each named
4  defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d
5  930, 934 (9th Cir. 2002).

6        In addition, supervisory personnel are generally not liable under § 1983 for the actions
7  of their employees under a theory of *respondeat superior*.  When a named defendant holds
8  a supervisory position, the causal link between him and the claimed constitutional violation
9  must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher
10 v. Saalfield*, 589 F.2d 438, 441 (9th Cir. 1978).  Plaintiff must allege facts that a supervisory
11 defendant either: personally participated in the alleged deprivation of constitutional rights;
12 knew of the violations and failed to act to prevent them; or promulgated or implemented a
13 policy "so deficient that the policy itself is a repudiation of constitutional rights" and is "the
14 moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.
15 1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

16       Defendant Skolnik is correct that the reference to him in Count III was dismissed on
17 screening. (Doc. # 8 at 11, Doc. # 7.)  Furthermore, the Complaint is devoid of any allegation
18 that Defendant Skolnik personally participated in a constitutional violation.  Plaintiff fails to
19 allege that Defendant Skolnik knew of the violations of others and failed to act to prevent
20 them, or that he promulgated a policy that is so deficient that it serves as a constitutional
21 violation.  In fact, Plaintiff appears to concede that Defendant Skolnik should be dismissed.
22 Accordingly, the motion to dismiss Howard Skolnik should be granted with prejudice.
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING IN PART AND DENYING IN PART** Defendants' Partial Motion to Dismiss as follows:

- Denying the motion to dismiss as to Plaintiff's claim in Count II that Defendants violated his due process rights in connection with his placement in disciplinary segregation;
- Granting the motion to dismiss with prejudice as to Plaintiff's claim in Count II that Defendants violated his due process rights by depriving him of his prison job, pay, and by depriving him of his preferred housing assignment;
- Granting the motion to dismiss with prejudice as to Plaintiff's claim in Count II that Defendants violated his due process rights as a result of the processing of his disciplinary appeal;
- Granting the motion to dismiss without prejudice as to Plaintiff's claims under the First Amendment and RLUIPA in Count IV;
- Denying the motion to dismiss as to Defendant Stewart; and
- Granting the motion to dismiss with prejudice as to all claims asserted against Defendant Skolnik.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

///
///
///

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: June 27, 2011.

_____
UNITED STATES MAGISTRATE JUDGE