**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

RALPH COUNTRYMAN,

      Plaintiff,

vs.

STATE OF NEVADA, et. al.

      Defendants.

3:10-cv-00107-LRH (WGC)

**REPORT AND RECOMMENDATION**
**OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment (Doc. # 52.)[1] Plaintiff opposed (Doc. #65) and Defendants have replied (Doc. # 66). Also before the court is Plaintiff's Cross-Motion for Summary Judgment. (Doc. 54.) Defendants opposed (Doc. # 61) and Plaintiff replied (Doc. # 64). After a thorough review, the court recommends that Defendants' motion be granted, and Plaintiff's motion be denied.

## I. BACKGROUND

At all relevant times, Plaintiff Ralph Countryman was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 8) at 1.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Brian Williams, Cheryl Burson, David Magnum, and Susan Stewart. (*See* Screening Order (Doc. # 7); Docs. # 29, # 30.)

---

[1] Refers to court's docket number.

Plaintiff's remaining claims are a retaliation claim in Count I and a due process claim in Count II. (*See* Docs. # 29, # 30.) In Count I, Plaintiff alleges that defendants Stewart, Burson, and Magnum retaliated against him by convicting him of a disciplinary violation and putting him in disciplinary segregation for pursuing civil litigation. (Doc. # 8 at 5-7.) He asserts that after Plaintiff sent a letter complaining about Deputy Attorney General Stewart's conduct in two civil actions filed by Plaintiff, he was convicted of a disciplinary action for threats, unauthorized use of mail and unauthorized contact with an officer of the court. (*Id.* at 5.) As a result of this conviction, Plaintiff alleges that he was sentenced to 120 days in disciplinary segregation. (*Id.* at 6.) He asserts that this action was taken in retaliation for his participation in civil litigation. (*Id.*) Plaintiff claims that defendant Burson "bullied" Plaintiff into requesting protective segregation. (*Id.*) In addition, he avers that defendant Williams refused to overturn his disciplinary conviction. (*Id.* at 7.)

In Count II, Plaintiff alleges that Defendants violated his Fourteenth Amendment due process rights by convicting him of a disciplinary violation and placing him in disciplinary segregation in connection with the events described in Count I. (*Id.* at 8-9.) Plaintiff asserts that his disciplinary conviction was not supported by some evidence. (*Id.*)

Defendants now move for summary judgment, arguing: (1) Plaintiff's retaliation claim fails because the disciplinary action taken advanced legitimate correctional goals, was not taken because of any protected conduct, and Plaintiff's exercise of his First Amendment rights was not chilled; (2) Plaintiff's due process claim fails because no liberty interest was implicated in placing Plaintiff in disciplinary segregation, and even if it were, Plaintiff received all the process he was due; (3) Plaintiff cannot maintain damages claims against Defendants in their official capacities; and (4) Defendants are entitled to qualified immunity. (Doc. # 52.)

In his Cross-Motion for Summary Judgment, Plaintiff asserts that his claims survived screening and Defendants' Partial Motion to Dismiss. (Doc. # 54 at 2-3.) In addition, Plaintiff includes a vague argument regarding government misconduct which does not contain a particular reference to the allegations of this action. (*Id.* at 3.) Plaintiff then concludes that

1  there is no genuine issue as to any material fact for trial. (*Id.* at 4.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

3

uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations

4

omitted).

## III. DISCUSSION

### A. COUNT I- FIRST AMENDMENT RETALIATION

#### 1. Retaliation standard

A plaintiff may state a claim for violation of his or her First Amendment rights due to retaliation under 42 U.S.C. § 1983. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted); *see also Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 567-68). Retaliation claims must be evaluated in light of the deference that must be accorded to prison officials. *See Pratt*, 65 F.3d at 807.

The inmate must (1) submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action, and (2) demonstrate that his or her First Amendment rights were actually chilled by the alleged retaliatory action. *Pratt*, 65 F.3d at 806-07. Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. *See Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). The Ninth Circuit has recognized that prisoners have a fundamental First Amendment right to file prison grievances and pursue civil rights litigation, and "because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes*, 408 F.3d at 567 (citation omitted).

A plaintiff's mere speculation that there is a causal connection is not enough to raise a genuine issue of material fact. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes

5

of summary judgment") (citation omitted).

**2. Analysis**

First, Defendants assert that Plaintiff's claim fails because the disciplinary conviction and resulting placement in disciplinary segregation was in furtherance of the legitimate prison goal of preventing inmates from and disciplining them for threatening and harassing behavior. (Doc. # 52 at 7-8.) Additionally, Defendants argue that Plaintiff cannot show his First Amendment rights were actually chilled as a result of the disciplinary action taken against him.

Plaintiff argues that factual issues exist as to: (1) whether defendant Stewart followed proper procedure before seeking sanctions against Plaintiff pursuant to Nevada Revised Statute 209.451 or whether her actions prove she knowingly sought to violate Plaintiff's rights; and (2) whether Defendants' actions chilled Plaintiff's First Amendment rights. (Doc. # 65 at 3.)

The court finds that summary judgment should be entered in favor of Defendants and against Plaintiff with respect to Plaintiff's First Amendment retaliation claim.

Preliminarily, the court finds that whether or not defendant Stewart followed proper procedure before seeking sanctions against Plaintiff pursuant to Nevada Revised Statute 209.451 is irrelevant to this action. At issue is whether: (1) Defendants took disciplinary action against Plaintiff *because of* his involvement in civil litigation; (2) whether such action chilled the exercise of Plaintiff's First Amendment rights; and (3) whether it reasonably advanced a legitimate correctional goal.

There is absolutely no evidence before the court to suggest that the disciplinary action instituted against Plaintiff was taken for any reason other than to advance the legitimate correctional goal of preventing inmates from engaging in harassing or threatening behavior. Moreover, while Plaintiff concludes that a factual issue exists as to whether his First Amendment rights were chilled as a result of this disciplinary action, he has presented no evidence to create a genuine issue of material fact on this issue. He does not even make an argument, let alone provide specific evidence, to demonstrate how his First Amendment rights were chilled. Plaintiff has failed to raise a genuine issue of material fact in order to preclude the

6

1 entry of summary judgment in Defendants' favor. Therefore, summary judgment should be
2 granted in Defendants favor as to Count I.

3 **B. COUNT II- FOURTEENTH AMENDMENT DUE PROCESS**

4     **1. Standard**

5 While, "[l]awful imprisonment necessarily makes unavailable many rights and privileges
6 of the ordinary citizen," "[p]risoners may [ ] claim the protections of the Due Process Clause."
7 *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974). To that end, the Fourteenth Amendment
8 prohibits the deprivation of "any person of life, liberty, or property, without due process of
9 law." U.S. Const, amend. XIV. Those who seek to invoke due process protections must establish
10 one of these interests are at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A liberty
11 interest may arise from either of two sources: the due process clause or state law. *Id.* at 221.

12 First, under the Constitution itself, a liberty interest is implicated when the conditions
13 of confinement "[exceed] the sentence in such an unexpected manner so as to give rise to
14 protection by the Due Process Clause of its own force." *Sandin v. Conner*, 515 U.S. 472, 484
15 (1985).

16 Second, "a liberty interest in avoiding particular conditions of confinement *may* arise
17 from state policies or regulations, subject to the important limitations set forth in [*Sandin*]."
18 *Wilkinson*, 545 U.S. at 222 (internal citation omitted). Under *Sandin*, liberty interests created
19 by the state are generally limited to those that "impose atypical and significant hardship on an
20 inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. To
21 determine whether a restraint imposes "atypical and significant hardship," a court considers
22 a condition or combination of conditions or factors on a case by case basis, rather than invoking
23 a single standard. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *see also Ramirez*
24 *v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (citation omitted). Although there is no single
25 standard for determining whether a prison hardship is atypical and significant, in *Sandin*, the
26 Supreme Court cited three factors that provide a helpful framework: (1) whether the challenged
27 condition mirrored those conditions imposed upon inmates in administrative segregation and

28     7

protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Sandin*, 515 U.S. at 486-87.

In *Sandin*, the Supreme Court concluded that the disciplinary segregation imposed was not atypical and significant and therefore did not implicate a liberty interest because: (1) it mirrored the conditions of administrative segregation and protective custody; (2) placing the plaintiff in disciplinary segregation for thirty days did not disrupt his environment; and (3) it did not affect the duration of his sentence. *Sandin*, 515 U.S. at 485-87.

Assuming a plaintiff can demonstrate a life, liberty or property interest, the court must then determine what process was due and whether that process was afforded the plaintiff.

"[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff*, 418 U.S. at 556 (citations omitted). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* (citation omitted). In other words, while "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime," *id.* at 555, his interest in due process "must be accommodated in the distinctive setting of a prison" in order to "[assure] the safety of inmates and prisoners, [avoid] burdensome administrative requirements that might be susceptible to manipulation, and [preserve] the disciplinary process as a means of rehabilitation." *Superintendent, Massachusetts Correctional Institution, Wapole v. Hill*, 472 U.S. 445, 454-55 (1984) (citations omitted).

When an inmate faces disciplinary charges, due process requires that the inmate receive: (1) written notice of charges; (2) at least twenty-four (24) hours between the time the prisoner receives the written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the hearing officer of the evidence relied upon and the reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety

8

1 or correctional goals; and (5) legal assistance if the prisoner is illiterate or the issues presented
2 are legally complex. *Wolff*, 418 U.S. at 556.

3 In addition, "the requirements of due process are satisfied if some evidence supports the
4 decision by the prison disciplinary board." *Superintendent*, 472 U.S. at 455 (1985); *see also*
5 *Wapole*, 472 U.S. at 454-55 (citations omitted)*; Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir.
6 2003).

### 2. Summary of argument

First, Defendants argue that no liberty interest in avoiding disciplinary segregation was implicated in this instance. (Doc. # 52 at 9.) Defendants assert that Plaintiff was sentenced to 120 days disciplinary segregation in connection with the subject disciplinary hearing. (*Id.*) They assert that this was never carried out as Plaintiff requested and was assigned to discretionary protective/administrative segregation where he remained until he was transferred to another facility. (*Id.*) Moreover, Defendants assert that Plaintiff's sentence was not affected by his disciplinary segregation sentence. (*Id.*) Finally, Defendants assert that even if Plaintiff's time in segregation can be characterized as serving out his disciplinary segregation, he cannot show that it resulted in an atypical or significant hardship. (*Id.*)

Second, Defendants argue that even if a liberty interest were implicated by Plaintiff's placement in segregated housing, the requirements of due process were satisfied as follows: (1) Plaintiff was given written notice of the charges against him more than twenty-four hours in advance; (2) the hearing officer issued a written statement indicating the evidence he relied upon; (3) Plaintiff did not request and was not denied the right to call witnesses; (4) Plaintiff indicated he was capable of representing himself; and (5) the conviction was supported by some evidence. (Doc. # 52 at 9-10.)

Finally, Defendants argue that Plaintiff's claim fails because he requested to be placed in segregated housing. (Doc. # 52 at 10.)

Plaintiff asserts that he spent four months in disciplinary segregation, and eight months in prison segregation, and that the conditions in disciplinary segregation mirror those in

9

1  protective segregation. (*See* Doc. # 65 at 2-3 ¶¶ 5-7, 11.) Plaintiff claims that he also suffered
2  sanctions in the form of a 45 day good time forfeiture which affected the length of his sentence.
3  (Doc. # 65 at 5, 11.) Finally, Plaintiff concludes that a factual issue exists as to whether the
4  disciplinary conviction was supported by some evidence. (Doc. # 65 at 5.)

**3. Analysis**

The court finds that Plaintiff has failed to raise a genuine issue of material fact so as to preclude the entry of summary judgment in Defendants' favor as to the Fourteenth Amendment due process claim set forth in Count II.

The Attorney General's Office received a letter from Plaintiff to Deputy Attorney General Susan Stewart on September 12, 2007. (Doc. # 52 at 4; Doc. # 52-1 at 2; Doc. # 52-1 at 6 ¶ 3 (Stewart Decl.).) The letter stated: "If you oppose this motion I will be filing [misconduct] charges on you and any one else you may have sucked into this little mess. And I'm not sure what you [sic] cooking up with Chaplin Taylor but I'd hate to think that you would cause someone to loose [sic] their job just to delay loosing [sic] a case." (Doc. # 52-1 at 2.) After receiving the letter, Deputy Attorney General Susan Stewart sent a letter which enclosed a copy of Plaintiff's letter to Cheryl Burson, the Associate Warden of Programs at Southern Desert Correctional Center (SDCC). (Doc. # 52-1 at 4.) She described Plaintiff's correspondence as "inappropriate in both its tone and content" and indicated that she was forwarding a copy to the prison "for further action as you see appropriate." (*Id.*)

On September 25, 2007, Plaintiff was served a written notice of disciplinary charges related to the letter he sent to Stewart. (Doc. # 52-1 at 8.) A disciplinary hearing on the charges was conducted on October 2, 2007. (Doc. # 52-1 at 12-15.) Plaintiff was found guilty of the charges of threats and harassment towards Stewart and unauthorized use of mail as the letter was sent to Stewart via mail. (*Id.*) In finding Plaintiff guilty, the hearing officer relied on the letter Plaintiff sent. (*Id.*)

Defendants have submitted a copy of the transcript from Plaintiff's disciplinary hearing. (Doc. # 52-1 at 20-33.) Disciplinary Hearing Officer Shubert took a statement from Plaintiff.

10

(Doc. # 52-1 at 22-30, 3:17-25 thru 11.) The hearing officer then asked some questions of Plaintiff before finding Plaintiff guilty of the charges based upon the contents of the letter. (Doc. # 52-1 at 30-32.) Plaintiff received sanctions in the form of 120 days of disciplinary segregation and a "stat A referral." (*Id*.)

First, the court finds that the evidence before it does not implicate a liberty interest. Plaintiff concedes that the conditions of confinement in disciplinary segregation mirrored those in protective custody. Even if the court accepts that Plaintiff was placed in disciplinary segregation, as opposed to protective custody, for a period of four months, he does not provide any evidence to establish that his placement in either housing classification amounts to an atypical and significant hardship. Moreover, while Plaintiff contends that he lost 45 days of good time credit, he does not provide evidence to establish this was part of the sentence imposed in connection with the subject disciplinary hearing.

Second, the court finds that even if a liberty interest were implicated, Plaintiff received all the process he was due. Plaintiff does not take issue with the procedural protections outlined for disciplinary hearings in *Wolff v. McDonnell* (which the court finds were met); instead, he asserts that the hearing officer's determination was not supported by some evidence.

"Ascertaining whether [the 'some evidence' standard] is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id*. at 455-56 (citations omitted) (emphasis added). The Court declined to adopted a more stringent standard, reasoning, "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Id*. at 456 (citation omitted). The Court recognized, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id*. Courts assessing this issue are instructed "not to make [their] own assessment of the credibility of

11

witnesses or reweigh the evidence." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citing *Hill*, 472 U.S. at 455).

Here, it is clear that the hearing officer relied on the contents of the letter Plaintiff sent to Stewart in finding him guilty of the charges. The court finds that the contents of the letter are sufficient to constitute "some evidence" in support of the guilty determination. While the hearing officer was also presented with Plaintiff's side of the story, the contents of the letter are enough to support the determination. The court is not permitted to re-weigh the evidence at this time; instead, it is tasked with deciding if there is *any* evidence in the record to support the guilty finding. Because the guilty finding is supported by the contents of the letter, Plaintiff was afforded due process. As a result, the court recommends that summary judgment be entered in Defendants' favor.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 52) and **DENYING** Plaintiff's Cross-Motion for Summary Judgment (Doc. # 54).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: September 18, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE